The last argued case for the day. We have two consolidated cases and then a case in tandem that's on submission. The case is to be argued by counsel 21-1896, 21-1923, United States v. Green. Good morning, Your Honors. May it please the Court, my name is James Koussouris and I represent Brandon Green in this appeal. Brandon Green was convicted after trial and sentenced to a combined 295 months in prison, pretty much the rest of his life. We submit to the Court respectfully that the trial was riddled with errors of constitutional magnitude that require reversal. In this brief time, I will focus on the 924C count, but I just ask the Court to note in our brief that so many of the issues interact with each other. And the ineffective assistance, the prosecutor's summation, all go to the bookends of the period of time the 924C is predicated on. It involves the constructive amendment. It involves the drug-gun nexus. So if I may, the first thing I'll address. Well, just then if we disagree, and I'll let you make the arguments, but if we disagree with you on that, then the other arguments fall away as well, don't they? Well, you have to disagree on all of them because, and I don't think you can respectfully, the drug-gun nexus in and of itself, regardless of what narcotics conspiracy you apply it to, is just absent. So in this case— You are basically arguing that there is a constructive amendment with respect to 924C with respect to whether it was the Bloodhounds or Rube or whatever. The constructive— That's the key of your argument. Well, that is certainly— Then everything else, okay. But let's make that, okay? Let's discuss that, Judge Calabresi. For a defendant to prevail on a claim of a constructive amendment, he must demonstrate that either the proof of trial or the trial court's jury instructions so alter an essential element of the charge or something very important here. It is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment. You have a RICO charge here which extends to December of 2016. You have an 846 that extends to 2016. You have a 924C, and the specific verdict here was that the defendant did not commit the 924C in relation to the RICO of which the narcotics conspiracy was a part and actually a big part. Was he told ahead of—somewhere ahead—was he told somewhere ahead of time? Now, he did say he was surprised, but was he told? Because in these cases, we have looked to that as well. Your Honor, he was not informed that the core of criminality, which is of clear import in this analysis under Sterone, Milstein, and many of the cases in this circuit. The core of criminality unquestionably throughout this entire trial was the RICO up until December of 2016. He was arrested in Connecticut in May of 2017, and never once was he under the impression that the narcotics conspiracy, which clearly was said to have ended in 2016, that the 2017 seizures incident to his arrest were a part of it. So that is the constructive amendment, and I have to say there is no way, if you just think about this case and think about all the evidence that went into the grand jury, there's no way that any of us can say that the grand jury heard evidence and considered the 2017 evidence when they returned an indictment on the 846 and the RICO specifically ending in December of 2016. He wasn't charged with being a felon in possession in May of 2017. He wasn't charged with simple possession of the weapons in 2017. The indictment and then the verdict really tell a good part of this story, I see, Judge Angeli. There was evidence, was there not, of your client furnishing a gun and drugs to somebody in 2011. I think it is possible that the jury's verdict as to the 924C could have been based on that. Your point is that we can't tell and that the acquittal on the RICO count is some form of evidence suggesting that it was more likely the 2017 events that were the basis. Your Honor, I completely agree with you. A, we can't tell, but B, the acquittal really does speak volumes. This jury was thinking about these charges and if you look at the 924C convictions with respect to the other defendants, they're different. They parsed it out and they found that Mr. Green did not commit the 924C relative to the RICO of which that 846 was a part. But with respect, but then if we are looking at the testimony evidence of your client providing a gun along with drugs at the earlier date, doesn't that then fold into the sufficiency question? So if that's sufficient to maintain the count, then to my original question, don't the other claims including the constructive amendment and variance claim fall away? Well, I think that perhaps under certain circumstances, yes, but the government never argued, never argued to the jury and never argued that that is what supported the 924C. When you look at the government's summation, and this is important, and we cite it on page 35 of our brief, and it's at 8952 of the record, the government specifically cites the 2010 cocaine seizure and then the bookend being the May 2017 gun seizure as the evidence in support. They don't cite that provision of that, the alleged provision of that weapon. But Judge Nathan, again, if you look at the acquittal, if you look at the jury saying that the government did not prove the 924C relative to the RICO, this whole trial was about the gang activities and about the drug dealing, then it really does tell you that they relied on the May 2017 seizure of the guns for the 924C. I see ‑‑ I wish I could be up here for a lot longer. You could finish up. Go ahead. But I do want to just talk about the nexus because as far as the nexus goes, and I by no means concede that you should consider that 2011 evidence, but there's no nexus, period, irrespective of whether you consider the May 2017 or anything that happened before that. You know, the jurisprudence, starting with Bailey, then going to Smith, then all of our circuit's decisions, including Lisantha, which I do think is on point, if you look at the testimony carefully, they go into the house, and it's in our brief. I assure you that we're accurate in our quotes. They go into the house. They don't see him in the bedroom. They hear somebody upstairs, and if you just look at ‑‑ I'm rushing because of the time. I promise I'll be done quick. The guns are found in a closet, in a bag, on a different floor, secreted. The evidence does not clearly show the state where the $2,000 was. There's no drugs in the apartment, and if you look at Lisantha, you look at Leland, and Leland from the Sixth Circuit has a great analysis of Bailey moving into Smith, and all of the cases that show that Congress intended for this statutory, consecutive five, seven, or ten years, you have to show a nexus. The standard is the ultimate question of whether the firearm afforded some advantage, actual or potential, real or contingent, relevant to the vicissitudes of drug trafficking. When you look at Lisantha, the fellow goes and meets with a co‑conspirator with whom he is dealing drugs. He is arrested during the conspiracy in his car with a gun, with money, and this court finds it's not enough. In our case, there's no drugs in the apartment, and I want you, please, to consider this. At the time, in Bridgeport, in 2017, even Judge Gardefee says in the denial of his Rule 29, at that time, the government has taken the conspiracy down, and he's there, and he even talks about it in his text about the crisis that he's in. These texts are just about collecting a debt from a while ago, and collecting a debt from a fellow that's got nothing to do with BHP. There's no evidence that that apartment is being used to traffic in narcotics. He's just making phone calls saying, you owe me money for a year. Where is it? There's no nexus with these guns. They are not accessible, and there is no evidence that there's any reason he would want them to be accessible there. So, yes, Judge Calabresi, my main argument here is there's no question that the May 2017 evidence is a constructive amendment. It did broaden the parameters of the 924C that was charged. The government relied on it, called it the bookends of this case, and the conviction was clearly predicated on the May 2017 evidence. The reason it all ties in is because when you look at the government summation and the misstatements, when you look at the ineffective assistance for not bringing this constructive amendment to the fore during the trial and figuring it out then, it allowed Mr. Green to get convicted on uncharged conduct. So thank you, Counselor. Thank you, Wakanda Rappaport. Thank you so much for your time. We do have three minutes for rebuttal.  My name is Andrew Chan, and I represent the United States in this appeal, as I did in the proceedings before the district court. I'd like to start off by going back to the question about the constructive amendment. There was no constructive amendment of the 924C offense here. When you go back to the case law in cases like D'Amelio, the relevant question is whether the proof at trial fell completely outside of the core of criminality that was charged by the grand jury or if that proof modified essential elements of the offense. Well, if this one doesn't, is there ever constructive amendment? Now, I must say on our cases, I find it hard to find constructive amendment because our cases are very much your way, but isn't this one just about as far as you can go? Well, Your Honor, I think in cases like Sterone and other cases in which the court has tackled this question of when there's a constructive amendment, the relevant question is whether or not there was completely different legal theories that were presented to the jury. This is something that was going on in New York, and that's what was charged, and we all know that Bridgeport in Connecticut is a different world, and so on and so on. I don't think that's what we have here because the indictment in this case alleged a decade-long narcotics conspiracy involving members of the Bloodhound Brims, and that narcotics conspiracy began in or about 2005, and the indictment alleged that it continued at least until in or about December of 2016. The indictment alleged that the Bloodhound Brims gang operated both inside of New York City and outside of New York City, and the 924C offense was linked to this sprawling narcotics conspiracy and alleged that there were multiple firearms that were used and carried in furtherance of this narcotics conspiracy. Given the lengthy time frame of this narcotics conspiracy and the 924C offense, the fact that it involved multiple firearms, the evidence regarding these May 2017 guns did not fall completely outside of the core criminality that was charged by the grand jury or modify any essential elements of the offense. These are guns that were seized approximately six months after the date in the indictment while the defendant was on the run from the police in Connecticut, and the evidence showed that the defendant was still engaged in the narcotics conspiracy. As we noted in our brief, there were text messages between the defendant and another member of the gang. Is that Gotti? Is that Gotti? That's the only, I mean, those text messages to Gotti are the only link that there is, and you say that's enough. Your Honor, I would suggest that the text messages with Gotti are corroborated by the other physical evidence that was seized from the apartment. The evidence was guns, not drugs, but if there is a link, I mean, Gotti is the key to your saying that this is really important. I think Gotti is certainly helpful to our position that the narcotics conspiracy that was alleged in the indictment continued through the date that the defendant was found in his apartment. I would also add, though, that there was a copy of the Bloodhound Brim's indictment and nonpublic discovery materials that the defendant only would have been able to obtain from other co-defendants in the case that were seized from that apartment. There was also drug trafficking paraphernalia seized from the apartment that, again, suggested continuation of the same narcotics conspiracy. What was with drug trafficking paraphernalia? It included glassine bags of the type that would be used for packaging drugs. It also included the seizure of a grinder that would be used for grinding drugs into distribution quantities for sale. Your adversary says that given the acquittal on the RICO 924C that one has to infer the conviction on the narcotics 924C as key to the 2017 evidence as opposed to the, let's say, the 2011 evidence. Isn't that a reasonable inference? That's not a reasonable inference, Your Honor, and I think that's not how sufficiency evidence, sufficiency of the evidence review has worked. No, no, no, but it goes to the issue of prejudice here, right? In other words, if the way the case had come in made it reasonably clear that the jury either had or likely did focus on the gun evidence within the charge time frame, that would be one thing. But if the clues the jury left behind suggest that it was really focused on 2017, whether we consider this a claim of prejudicial variance or constructive amendment, the analysis is a little different. I think this case would be slightly more difficult if the jury had come back with a special verdict form that indicated precisely which gun or guns they were relying on for the 924C offense, but that's actually not what we have here. We have a situation where- Is there some other way of harmonizing then the acquittal on the RICO count? No. I'm not sure that there is a way to harmonize them. I think there's one possible theory that in the indictment, the RICO conspiracy was described as a crime of violence, and that could be one reason why the jury may have come out differently on the 924C offense as it's linked to the RICO conspiracy. But I think that sort of goes to the overall problem that's identified by the case law in cases like Acosta and the Supreme Court's decision in Powell. It's not really the province of courts to try to look back into the jury room and to figure out which parts of the record that they relied on in their deliberations. If one were to analyze this as a claim of prejudicial variance, one question that would arise would be when the defense became aware, in effect, that this evidence from May 2017 was part of what the government was going to pursue. What's the answer to that? I think that the defendant was put on notice very far in advance of trial. In fact, as we noted in our brief, the defendant filed a motion to suppress the evidence that was seized from the apartment, and there was an evidentiary hearing to address that fact months in advance of trial. But he did say he was surprised. He specifically said he was surprised. And with all due respect to my adversary, I think that the quote that they took from the trial transcript I think misrepresents the nature of that surprise. I think if you look at the context of what defense counsel was saying, defense counsel was surprised that the testimony involving the guns was going to be happening that day. I don't think that defense counsel ever was surprised given suppression hearing, given the pretrial discovery materials, given the Janks Act materials, given the exhibit list and the witness list. What's the chronology between the denial of suppression and trial? How long? Your Honor, I don't have that piece of information at my fingertips, but I believe that it was the suppression hearing took place months before the trial occurred. I suppose even if you're surprised. Well, I guess the relevant question is the ruling on the denial of the suppression. And I believe the denial of the motion to suppress took place somewhat closer in time to the trial. While opposing counsel suggested that if we disagreed with you and found this, that this tainted everything else. He didn't get a chance to make that argument because he didn't have time. I take it you say even if we found this, it would be only this count that would fall and everything else would stand. That's correct, Your Honor. If you look at the analysis for prejudicial spillover, the factors include whether the evidence on the 924C count was so inflammatory that it would have tended to incite or rouse the jury on other counts, whether the dismissed count and the remaining counts were similar, and whether the government's evidence on the remaining counts was weak or strong. And I think here, given that the 924C offense involved firearms that were used in furtherance of the charged narcotics conspiracy, nearly all of those factors weigh in favor of simply cutting off the 924C charge if the court decided to vacate that count. Thank you, Mr. Chan. I'm sorry, you have 42 seconds remaining. Unless the court has any additional questions, I'm happy to forfeit the remainder of the time. The government respectfully requests that the court affirm the judgment of conviction. Thank you, counsel. I was going to take this 42 seconds, but very, very briefly, and I do thank Your Honors for your patience. Judge Engelmeyer, I think your point is clear and important, because when you look at Sterone, when you look at Milstein, when you look at Salmonese, we don't need to know whether the defendant was convicted based on something that the grand jury didn't consider, because we can never know that, and we shouldn't speculate. The question is whether the record before this hour of the court suggests that that very well may have happened, and I think the facts on this record and the acquittal and what you can extrapolate from that acquittal make it abundantly clear that that 924C conviction was, in fact, based on the 2017 events. Can I ask you, though, this question? I mean, the evidence comes in about the possession of the gun and, for that matter, the glass scenes and so forth in May, but why wouldn't that be received in evidence anyway, even as bearing on the conspiracy during the time period alleged? Let's suppose that the indictment didn't say that the conspiracy ended in or about December. It said it literally ended in December. There would be a substantial argument that the possession of these tools of the trade in the defendant's home afterwards is still relevant evidence from a look-back perspective in bearing on what the defendant had done just some months before. In that respect, can't the conviction here be sustained not on the ground that the possession was in May 2017, but that the possession in May 2017 says something about the historical possession? I think not, and I don't think you'd let it in for the following reasons. First of all, it is outside the period of the conspiracy, and there's a difference between something coming in under 404B, something coming in to support an allegation of something else, as opposed to substantive evidence. If it were to be allowed in, it wouldn't be allowed in as part of the conspiracy, which it ended. When you take the facts that also come in with it, the fact that the conspiracy— There would be a limiting instruction for the purposes for which the jury could consider it. But it wouldn't be substantive evidence. And here you've got a jury substantively convicting a man of a 924C, and even assuming it came in, it wouldn't come in. Was there a motion below to exclude it, A, as outside the conspiracy, and B, if received, propose limiting instructions? No, and that is—as I said, it kind of ties in. That's part of the ineffective assistance claim. It should have been raised as a constructive amendment. It should have been moved to have been excluded, being outside the period of the conspiracy, and that if— And then there would have been litigation. Your Honor, I don't think it is that close a call here. It's outside the conspiracy. The only fellow that he's talking to is Rube. The conversations without— So why then isn't the right way to look at this to affirm and to save for the 2255, the ineffective assistance claim? I think not, Your Honor. I think that you should find that there is a constructive amendment. I think that this record makes it so clear that the 924C has to go just for lack of nexus, even if you don't go to the constructive amendment, for a lack of nexus in terms of where it is, its inaccessibility, the lack of any drugs in the apartment. But to Mr. Chan's point is that we can't reverse engineer the jury's verdict. This is ultimately a sufficiency claim. The 2011 evidence, which has your client in one motion handing a co-conspirator a gun and drugs, gives you the nexus, and it's conjectural that they instead founded the 924C key to the narcotics conspiracy based on the 2017 gun. I respectfully disagree, Your Honor. You're talking about saying that in 2017, when a conspiracy has been taken down, when there is no contact, every co-operator, their last contact with this fellow is in 2013, and we've cited parts of the record that he was kicked out, that all of his guns or drugs had been stolen. There's no contact with him. Could you address the contacts we've got? I'm sorry? Could you address the contacts we've got? The contacts with Gotti, as we put, I think it's on page 35 of our brief. They're talking about money, and Gotti says this guy wants to pay you. He's not arranging drug deals. He's not selling anything. Apparently, something was sold a year ago, and Mr. Green actually says in one of the texts, the crisis that I'm in. Of course he's in a crisis. He ran to Connecticut. Other people have been indicted. He thinks he's going to get arrested. He's not selling drugs. He's, if anything, at best, trying to collect money from something in the past. So there's no evidence in this record that that apartment is the focal point or in any way being used to traffic in drugs. Picks his stuff up. He runs to Bridgeport. Different world, as you say, and there is absolutely no nexus here at all, at all. Thank you, counsel. Appreciate the arguments of both sides. The consolidated matters are submitted, as is the pro se case we're hearing in tandem, 21-2244.